No.  04-6290
File Name:  05a0924n.06
Filed:  November 21, 2005

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| CLETUS WAYNE NIXON, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| WASTE MANAGEMENT, INC., and WASTE | ) COURT FOR THE WESTERN |
| MANAGEMENT OF MISSISSIPPI, INC., | ) DISTRICT OF TENNESSEE |
| | ) |
| Defendants-Appellees. | ) |

Before:       **MARTIN**, **NELSON**, and **ROGERS**, Circuit Judges.

**DAVID A. NELSON**, Circuit Judge.  This appeal is from an order granting a defense

motion for summary judgment in a retaliatory discharge action.  There are two issues before

us:  (1) whether this case, in which the plaintiff claims that he was constructively discharged

in retaliation for his pursuit of Tennessee workers' compensation benefits, was properly

removed from the Tennessee court where it was originally filed; and (2) whether, as the

district court held, the law of Mississippi, rather than the law of Tennessee, governs the

parties' substantive dispute.

Guided by *Harper v. AutoAlliance International, Inc.*, 392 F.3d 195 (6th Cir. 2004),

we conclude that the case did not, strictly speaking, arise under the Tennessee workers'

compensation laws.  Accordingly, a federal statute barring removal of civil actions "arising

under [state] workmen's compensation laws" has no application to the case at bar, and removal to federal district court on diversity grounds was proper.

We also conclude that the district court erred in its choice of the law to be applied in adjudicating the plaintiff's action on the merits. Although Mississippi has significant ties to the parties and to the alleged injury, Tennessee does too — and we think that Tennessee's statutorily expressed policy of ensuring that its injured workers receive compensation gives it a more significant relationship to the dispute, at least where Tennessee is the locus of the injury for which the workers' compensation claim was brought. We conclude that the governing law is therefore that of Tennessee.

The defendant not having shown that it is entitled to judgment as a matter of Tennessee law, the judgment entered by the district court will be reversed and the case remanded for further proceedings.

I

The plaintiff, Cletus Wayne Nixon, drove a garbage truck for the defendants, Waste Management, Inc., and/or Waste Management of Mississippi, Inc. (There appears to be a factual dispute as to which corporate entity actually employed Mr. Nixon in the first instance.) A resident of Tennessee, Mr. Nixon reported to work each day in Corinth, Mississippi, and then returned to Tennessee to cover his route there. (Corinth is said to be about two miles from the state line.)

Mr. Nixon injured his back in September, 2002, while on the job in Tennessee. He sought and received benefits under Tennessee's workers' compensation law, Tenn. Code Ann. §§ 50-6-101 *et seq.* When he was cleared to return to work, Mr. Nixon was told that he was no longer needed in Tennessee but could work instead as a truck washer for Waste Management of Mississippi in Tupelo, Mississippi. According to the defendants, Nixon's absence from his route in Tennessee demonstrated that four drivers could do the work that had previously been done by five; it was this opportunity for "downsizing" that allegedly led to the reassignment offer. Be that as it may, Mr. Nixon accepted the offer.

After about three months of washing trucks, Mr. Nixon quit the new job. Alleging that the "humiliation, inconvenience and decreased pay" associated with his new position had effected a constructive discharge, Nixon sued Waste Management[1] on the theory that it discharged him in retaliation for his pursuit of workers' compensation benefits. The lawsuit was originally filed in the circuit court of Hardin County, Tennessee.

Waste Management removed the action to federal district court on diversity grounds. Mr. Nixon then moved to remand the action on the basis of 28 U.S.C. § 1445(c), which provides that state-court actions arising under state workers' compensation laws are not removable. The district court denied the motion, holding that Nixon's "retaliatory discharge

---

[1]Unless otherwise specified, we use "Waste Management" to refer collectively to the defendants, Waste Management, Inc., and Waste Management of Mississippi, Inc.

claim does not arise under the workers' compensation laws of Tennessee." The court also denied a motion for reconsideration of this ruling.

Waste Management subsequently moved for summary judgment on the ground that the parties' dispute was governed by Mississippi law, which does not recognize a cause of action for retaliatory discharge. The district court granted the motion and entered final judgment in favor of the defendants. Mr. Nixon filed a timely appeal.

II

Section 1445(c) of Title 28, United States Code, says that "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." Mr. Nixon's retaliatory discharge action must be remanded to the Hardin County court, therefore, if the action "aris[es] under" Tennessee's "workmen's compensation laws."

This court interpreted the phrases "arising under" and "workmen's compensation laws" in *Harper v. AutoAlliance International, Inc.*, 392 F.3d 195 (6th Cir. 2004). We held there that "[a] civil action arises under a state workmen's compensation law when either (1) the workmen's compensation law created the cause of action or (2) the plaintiff's right to relief necessarily depends on resolution of a substantial question of workmen's compensation law." *Harper*, 392 F.3d at 203. We held further that common law which recognizes a "cause of action for retaliatory discharge in violation of the public policy to protect workmen's

compensation claimants" does not itself constitute a "workmen's compensation law" within the meaning of § 1445(c). *Id.* at 207.

The workers' compensation statute at issue in *Harper* expressly prohibited retaliatory discharge, see Mich. Comp. Laws § 418.301(11), but the statute had been amended to do so only after the Michigan courts "had held that a discharge for exercising rights under the [statute] gives rise to a cause of action for wrongful discharge in violation of public policy." *Harper*, 392 F.3d at 203. Further, the statute did not specify a remedy or means of enforcement, an omission from which we inferred that "the legislature intended [use of] the judicially-crafted wrongful discharge cause of action to remedy retaliatory discharges." *Id.* at 207. We concluded that the Michigan statute did not create, but merely codified, a cause of action for retaliatory discharge. See *id.* at 204-05. Because it was grounded in general principles of common law, we held that "the cause of action for retaliatory discharge in violation of the public policy to protect workmen's compensation claimants is not one of Michigan's 'workmen's compensation laws,' but merely one iteration of a common law tort that potentially applies to a myriad of different wrongs in the employment setting." *Id.* at 207.

A Tennessee cause of action for retaliatory discharge was first recognized in *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441 (Tenn. 1984). The Tennessee Supreme Court acknowledged in *Clanton* that the state's workers' compensation law did not "explicitly create[]" a retaliatory discharge cause of action. *Clanton*, 677 S.W.2d at 445. The court

held, however, that such an action was "necessary to enforce the duty of the employer, to secure the rights of the employee and to carry out the intention of the legislature." *Id.* In this connection the court determined that retaliatory discharge is a "device" within the meaning of Tenn. Code Ann. § 50-6-114, which prohibits any "contract or agreement, . . . rule, regulation, or other device" from relieving an employer of its obligations under the workers' compensation law. See *id.*

In *Harney v. Meadowbrook Nursing Center*, 784 S.W.2d 921, 922 (Tenn. 1990), the court explained that

> "*Clanton* did not create a new exception to the [at-will employment] rule. The Court merely recognized that implicit within the provisions of T.C.A. § 50-6-114 a cause of action existed to prevent an employer from utilizing retaliatory discharge as a device to defeat the rights of an employee under the Workers' Compensation Law."

One might think that a cause of action "implicit" in a workers' compensation statute would be a cause of action arising under the statute, but this court's decision in *Harper* suggests that one should not leap too readily to such a conclusion. And in its post-*Harney* decision in *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 899 (Tenn. 1992), the Tennessee Supreme Court referred to "our recognition in *Clanton* of a *common law tort action* for retaliatory discharge." (Emphasis supplied.) "Importantly," the court said,

> "*Clanton* is not limited to retaliatory discharge actions arising from an employee's exercise of workers' compensation rights, but rather makes the tort action of retaliatory discharge available to employees discharged as a consequence of an employer's violation of a clearly expressed statutory policy." *Hodges*, 833 S.W.2d at 899.

The Tennessee Supreme Court subsequently reaffirmed, in *Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822, 823 (Tenn. 1994), that an action for retaliatory discharge is available not only in the workers' compensation context, but wherever "the employer has violated a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision and the employer's violation was a substantial factor in the employee's discharge."

Against this background, we conclude for purposes of our § 1445(c) analysis that Mr. Nixon's cause of action was created by the Tennessee Supreme Court in *Clanton* and not by Tennessee's workers' compensation law. As the *Clanton* court observed, the statute does not explicitly create a cause of action; it implies the existence of a right not to have workers' compensation benefits terminated by a wrongful discharge, but it does not establish any means of enforcing that right. If the cause of action were a creature of the workers' compensation law, moreover, it would have no application outside of the workers' compensation context. Yet the Tennessee Supreme Court has repeatedly recognized that a retaliatory discharge action may be maintained in other contexts.

If, as we believe, Tennessee's cause of action for retaliatory discharge is a judicial creation, then Mr. Nixon's retaliatory discharge action does not arise under the workers' compensation laws of Tennessee. See *Harper*, 392 F.3d at 203, 207. (Mr. Nixon does not argue that his right to relief depends on resolution of a substantial question of workers' compensation law.) Therefore, removal was not improper under 28 U.S.C. § 1445(c).

III

Where, as here, federal jurisdiction is based on diversity of citizenship, we apply the choice-of-law rules of the forum state. See *NILAC International Marketing Group v. Ameritech Services, Inc.*, 362 F.3d 354, 358 (6th Cir. 2004). Tennessee has adopted the "most significant relationship" approach to choice-of-law questions. *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992).

Under this approach, a tort action is governed by the law of the state with "the most significant relationship to the occurrence and the parties under the principles stated in § 6 [of the Restatement (Second) of Conflict of Laws]." Restatement (Second) of Conflict of Laws § 145(1). If the action is for personal injury, the law of the state where the injury occurred governs unless another state has "a more significant relationship under the principles stated in § 6 to the occurrence and the parties." *Id.* § 146.[2]

---

[2]Under § 6 of the Restatement,

"the factors relevant to the choice of the applicable rule of law include:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability, and uniformity of result, and

An analysis of which state has a more significant relationship to a dispute should consider

"(a)  the place where the injury occurred,

(b)  the place where the conduct causing the injury occurred,

(c)  the domicile, residence, nationality, place of incorporation and place of

business of the parties,

(d)  the place where the relationship, if any, between the parties is centered."

*Id.* § 145(2).

Retaliatory discharge is considered a personal injury in Tennessee, see *Headrick v. Union Carbide Corp.*, 825 S.W.2d 424, 425 (Tenn. Ct. App. 1991), so we must first identify the state where Mr. Nixon's injury occurred. A Tennessee resident, Mr. Nixon was deprived of a job performed predominantly in Tennessee. Although the reassignment decision was made in Mississippi, we think that the principal injury — the loss of Mr. Nixon's preferred position — occurred in Tennessee. The law of Tennessee governs, therefore, unless Mississippi has a more significant relationship "to the occurrence and the parties." Restatement (Second) of Conflict of Laws § 146. We do not think it does.

The factors enumerated in § 145(2) of the Restatement do not clearly favor either state. Mr. Nixon's injury occurred in Tennessee, as we have said, but the conduct that caused

---

(g)  ease in the determination and application of the law to be applied."

the injury occurred in Mississippi. Waste Management of Mississippi is incorporated in Mississippi and has its principal place of business there,[3] but Mr. Nixon is a resident of Tennessee. He contracted with Waste Management in Mississippi and reported for work there, but until the reassignment he did most of his work in Tennessee.

The deciding factor, in our view, is the importance of a Tennessee statute to the parties' dispute. Although Tennessee's workers' compensation law did not create Mr. Nixon's cause of action, the injury occurred in Tennessee and it was Tennessee law that created the right to benefits the claiming of which by Nixon allegedly led to retaliation against him. The Tennessee statute created Waste Management's duty to pay benefits, and the statute embodies a clear policy against evasion of the duty. See Tenn. Code Ann. § 50-6-114. In these circumstances, we think that Tennessee has an interest in the litigation that is unmatched by any interest of Mississippi's. It seems to us that this interest gives Tennessee a more significant relationship than Mississippi's "to the occurrence and the parties."

IV

Unlike Mississippi, which has not recognized a cause of action for retaliatory discharge, see *Kelly v. Mississippi Valley Gas Co.*, 397 So.2d 874, 877 (Miss. 1981), Tennessee recognized such a cause of action in *Clanton*. Waste Management has not shown

---

[3]Waste Management, Inc. is incorporated in Delaware and has its principal place of business in Texas.

that it is entitled to judgment as a matter of Tennessee law. The judgment dismissing Mr.

Nixon's action is therefore **REVERSED**, and the case is **REMANDED** for further

proceedings not inconsistent with this opinion.