# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
November 19, 2019 Session Heard at Kingsport[1]

## JOSHUA KELLER v. JANICE CASTEEL ET AL.

**Appeal by Permission from the Court of Appeals**
**Chancery Court for Bradley County**
**No. 2012-CV-117    Jerri Bryant, Chancellor**

———————————————————

## No. E2017-01020-SC-R11-CV

———————————————————

We granted permission to appeal in this case to address when an employee handbook may create a property interest entitled to due process protection. After the petitioner municipal firefighter pled guilty to a criminal charge, his employment was terminated. The firefighter filed a complaint for judicial review of the termination, asserting a due process claim based on the municipality's personnel manual. The trial court and the Court of Appeals both held that the personnel manual gave the firefighter a property interest entitled to due process protection. We reverse that holding. In Tennessee, employment is presumed to be at-will. Employers, including governmental employers, may adopt policies and procedures to promote efficiencies and fair, consistent treatment of employees, and may put those policies and procedures in employee manuals or handbooks. In the absence of specific language showing the employer's intent to be contractually bound, such policies and procedures do not change employees' at-will status and do not create a constitutionally protectable property interest. In this case, the municipality's personnel manual included an explicit statement that the municipality did not intend the procedures to be binding or constitute any type of contract. Such disclaimers preclude any finding that the employer intended to be bound by the terms of the employee handbook. Accordingly, we decline to hold that the employee handbook converted the employee's at-will employment into a property interest entitled to due process protection.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Is Reversed and Judgment of the Chancery Court Is Affirmed for Different Reasons**

———————————————————

[1] We heard oral argument at Kingsport, Tennessee, as part of the Court's S.C.A.L.E.S. (Supreme Court Advancing Legal Education for Students) project.

HOLLY KIRBY, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, SHARON G. LEE, and ROGER A. PAGE, JJ., joined.

Ronald D. Wells, Stacy Lynn Archer, and Philip Aaron Wells, Chattanooga, Tennessee, for the appellants, Janice Casteel, City of Cleveland, Tennessee, and Steve Haun.

James R. McKoon, Chattanooga, Tennessee, and Sarah M. Block, Washington, D.C., for the appellee, Joshua Keller.

John T. Batson, Jr., Emily C. Taylor, and Brian R. Bibb, Knoxville, Tennessee, for amicus curiae Public Entity Partners, and Melanie E. Davis, Maryville, Tennessee, for amicus curiae Tennessee Municipal Attorneys Association.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner-Appellee Joshua Keller was hired by Respondent-Appellant City of Cleveland ("City") as a firefighter in December 2008.[2] In April 2009, while Mr. Keller was still under his 6-month probationary period, he was arrested and convicted of driving under the influence while off duty. The City Fire Department allowed Mr. Keller to remain employed but extended his probation for twelve months. It also asked him to undergo counseling for alcohol abuse.

No further incidents occurred until a little over two years later. On January 22, 2012, Mr. Keller had some friends at his home. Everyone, including Mr. Keller, was drinking alcohol. At some point, a fight broke out. Mr. Keller retrieved a firearm from his bedroom and shot it more than once; no one was injured by the shots. The report by the police officer who investigated the episode described Mr. Keller as "highly intoxicated."

---

[2] We recite the facts pertinent to this appeal. For a more complete recitation of the facts and testimony, please see the Court of Appeals' thorough recitation. *See Keller v. Casteel*, No. E2017-01020-COA-R3-CV, 2019 WL 354867, at *1–7 (Tenn. Ct. App. Jan. 28, 2019), *perm. app. granted* (June 19, 2019).

As a result of this incident, Mr. Keller was charged with reckless endangerment and two counts of aggravated assault. Two days later, City Fire Chief Steve Haun sent Mr. Keller a memo informing him that he was suspended without pay until the charges were resolved, at which time the City would make a decision about his employment.

On January 31, 2012, to resolve the charges against him, Mr. Keller pled guilty to simple assault. Mr. Keller informed Chief Haun of the resolution of the charges. Chief Haun told Mr. Keller he would let him know about his employment status.

Ultimately, Chief Haun decided to recommend termination of Mr. Keller's employment. On February 10, 2012, Chief Haun gave Mr. Keller a copy of Chief Haun's memo to the City Manager documenting his decision. The memo recounted Mr. Keller's work history, including the arrests and convictions, and stated:

> I have to make the decision that is best for our Department as a whole.
>
> I cannot, as Fire Chief, condone this behavior from a firefighter of the department. I have to think of the precedent that will set if I allow [Mr. Keller] to return. I would have to allow this type of behavior from the rest of the department as well as future employees and I am not prepared to lower our standards as a department to do what is easy. I feel [Mr. Keller] was shown compassion in 2009 and was allowed to continue to work for the City of Cleveland.
>
> I still have compassion for [Mr. Keller] and what dismissal will mean for his life. But I keep coming back to the realization that [Mr. Keller] made every decision, as poor as they were, to put himself in this position. Therefore, it is my recommendation of dismissal.

The City terminated Mr. Keller's employment effective February 17, 2012.

Mr. Keller sought an appeal pursuant to policies set forth in the City's personnel manual. The policies allowed employees to request an initial appeal to the City Manager, with judicial review by the local chancery court.[3]

---

[3] As discussed in more detail below, the City's personnel manual outlined the following appeal process:

The City Manager conducted a hearing as provided in the manual. Afterward, she sent Mr. Keller a letter notifying him of her decision to uphold the termination.

In May 2012, Mr. Keller filed a petition for a writ of certiorari with the Bradley County Chancery Court. It named the City and the City Manager as defendants.[4] The petition asserted the City violated Mr. Keller's right to due process under both the federal and Tennessee Constitutions by, among other things, having the administrative appeal of the decision to terminate Mr. Keller's employment heard by the City Manager. It claimed policies and procedures applied to the termination of his employment were arbitrary and capricious and the City did not have substantial and material evidence to support the termination. The petition asserted a violation of the Uniform Administrative Procedures Act, Tenn. Code Ann. §§ 4-5-101 (2015) *et seq.*, and of his due process rights under Tennessee Code Annotated §§ 27-8-101 *et seq.*[5] and Tennessee Code Annotated §§ 27-9-101 *et seq.*[6]

Mr. Keller later amended his petition to add federal claims. As a result, the City removed the case to the United States District Court for the Eastern District of Tennessee.

---

Any City employee reprimanded, suspended, demoted, or dismissed has the right to submit a request in writing to the City Manager to have the action reviewed. An employee who chooses to appeal to the City Manager must submit the request for an appeal within two (2) working days of receipt of notification of the disciplinary action, and must state his/her intent to have representation, and to name the representative(s). The request must be in writing. The City Manager shall schedule a hearing within ten (10) working days of the receipt of the employee's written request for appeal. The action of the City Manager shall be final and binding on all parties involved unless appealed to Chancery Court by the employee. However, if the City Manager determines that procedures established by law were not followed by the appropriate Supervisor and/or Department Head, the decision of the City Manager shall be binding on all parties involved unless appealed to Chancery Court by the employee or the City. Any employee reprimanded, suspended, demoted[,] or dismissed must timely request an appeal and complete the appeals process prior to filing an action in Chancery Court.

[4] Mr. Keller later amended his petition to add Chief Haun as a defendant. Unless otherwise specified, this opinion will refer to all Defendant-Appellants collectively as the City.

[5] Tennessee Code Annotated § 27-8-101 and the provisions immediately following it codify the common-law writ of certiorari, which is itself protected by the Tennessee Constitution. *See* Tenn. Const. art. VI, § 10.

[6] Tennessee Code Annotated § 27-9-101 and the provisions immediately following it set forth the process for review of actions taken by "any board or commission functioning under the laws of this state."

- 4 -

The federal district court granted the City's motion for summary judgment on Mr. Keller's federal claims. *Keller v. City of Cleveland*, No. 1:13-CV-91, 2014 WL 2809662, at *1 (E.D. Tenn. June 20, 2014). As to the due process claim under the federal Constitution, the district court explained that Mr. Keller had to show he was deprived of a protected property interest. *Id*. at *2. To determine that question, the district court looked to Tennessee law. *Id*. at *4.

The district court noted that, absent a contract, employment in Tennessee is generally at will. *Id*. Mr. Keller asserted the City's personnel regulations, contained in the personnel manual, gave rise to a protected property interest. *Id*. at *4, 6. The district court held specific disclaimers in the personnel manual prevented the City's regulations from being construed as creating a property interest or a binding contract. *Id*. at *6. With no protected property interest in continued employment, Mr. Keller could show no violation of his right to due process. *Id*. at *7. Consequently, the district court dismissed Mr. Keller's federal claims and remanded his state law claims to the Bradley County Chancery Court ("trial court").

In May 2015, several months after the federal court's remand to state court, the trial court granted partial summary judgment in favor of Mr. Keller on his due process claim. It held the termination of his employment was based on inappropriate procedure because it was based on evidence the City did not place in the record and because the City Manager reviewed her own action. In contrast to the federal district court, the trial court held that the City personnel manual constituted a contract and gave Mr. Keller a right to appeal.

The May 2015 order did not resolve the issue of damages. In July 2016, the trial court held an evidentiary hearing on damages. After the hearing, the trial court determined that Mr. Keller "failed to mitigate his damages," so it entered an order dismissing his petition.

Mr. Keller filed a motion to alter or amend the judgment. The trial court granted the motion, but not in a manner beneficial to Mr. Keller. For reasons not pertinent to this appeal, the trial court decided to review the City's original decision to terminate Mr. Keller's employment under Tennessee Code Annotated §§ 27-9-101[7] *et seq.* and 4-5-

---

[7] The statute provides that

322.[8]    It held first there was "material evidence in the record to support the original decision of the City" and any errors did not affect the merits. As to damages, the trial court concluded that, after his employment was terminated, Mr. Keller removed himself from the job market and did not use reasonable efforts to pursue other employment. For these reasons, the trial court again dismissed Mr. Keller's amended petition.

Mr. Keller appealed to the Court of Appeals. *Keller v. Casteel*, No. E2017-01020-COA-R3-CV, 2019 WL 354867 (Tenn. Ct. App. Jan. 28, 2019), *perm. app. granted* (June 19, 2019). The intermediate appellate court framed the issues as whether Mr. Keller was entitled to judicial review of the termination of his employment and, if so, whether he was entitled to damages as a result of the termination. *Id*. at *7.

To determine whether he was entitled to judicial review, the Court of Appeals considered as a threshold matter whether Mr. Keller had a protected property interest in

---

Anyone who may be aggrieved by any final order or judgment of any board or commission functioning under the laws of this state may have the order or judgment reviewed by the courts, where not otherwise specifically provided, [by filing a petition of certiorari with the circuit court consistent] in the manner provided by this chapter.

Tenn. Code Ann. § 27-9-101 to -103 (2017).

[8] The statute provides, in the relevant part, that

(a)(1) A person who is aggrieved by a final decision in a contested case is entitled to judicial
review under this chapter, which shall be the only available method of judicial review. . . .

. . . .

(h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.

Tenn. Code Ann. § 4-5-322 (2015).

his employment with the City. *Id.* It quoted the provisions in the City personnel manual on appeal of a termination decision to the City Manager and judicial review by the chancery court. It then quoted the disclaimers in the personnel manual on which the City relied. *Id.* The Court of Appeals' conclusion aligned with the trial court's analysis of whether Mr. Keller had a protected property interest: "While the Manual did not expressly provide a right to continued employment, it provided all employees with the unequivocal right to an appeals process concerning said employment and further provided a corresponding right to judicial review of such decisions." *Id.*

As to whether Mr. Keller was entitled to damages, the Court of Appeals first determined that any judicial review had to be through a common law writ of certiorari. *Id.* at *8. It held: "Regardless of whether the City Manager acted with material evidence in support of her decision, the procedure utilized was unlawful because the person who made the termination decision also affirmed the same decision on appeal." *Id.* It held Mr. Keller was entitled to damages under Tennessee Code Annotated § 27-8-117 and remanded the case to the trial court for a determination of damages. *Id.* at *8–9.

The City then sought permission to appeal to this Court, which we granted.

## ISSUES ON APPEAL

Slightly reworded, the City and Mr. Keller both present the following issues for review: (1) whether Mr. Keller had a property interest[9] in his employment with the City that entitled him to due process after the termination of his employment; (2) if so, whether the procedures utilized by the City were unlawful; and (3) whether damages are available as a remedy under a common law writ of certiorari.

## ANALYSIS

The due process clause in the Fourteenth Amendment of the United States Constitution guarantees that no State "shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1. The "law of the

---

[9] The City also includes as an issue whether Mr. Keller had a liberty interest in his employment with the City. In his statement of the issues, Mr. Keller refers to having a "liberty and/or property interest in his employment," but his brief to this Court includes no argument on a liberty interest. Under these circumstances, Mr. Keller has waived the issue of whether he had a liberty interest in his employment with the City. *First Cmty. Bank, N.A. v. First Tenn. Bank, N.A.*, 489 S.W.3d 369, 401 (Tenn. 2015) (citing *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012)). Consequently, we consider only whether Mr. Keller had a protected property interest.

- 7 -

land clause" in the Tennessee Constitution provides that "no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land." Tenn. Const., art. I, § 8; *Bailey v. Blount Cnty. Bd. of Educ.*, 303 S.W.3d 216, 230 (Tenn. 2010). This clause in Tennessee's Constitution provides protections similar to those provided by the due process clause in the federal Constitution. *Bailey*, 303 S.W.3d at 230 (citing *Lynch v. City of Jellico*, 205 S.W.3d 384, 391 (Tenn. 2006) (recognizing Tennessee's "law of the land clause" is "synonymous with the due process provisions of the federal constitution"). Both are "intended to secure the individual from the arbitrary exercise of the powers of government." *Mortg. Elec. Registration Sys., Inc. v. Ditto*, 488 S.W.3d 265, 280 (Tenn. 2015) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

> This Court has outlined the analysis for a procedural due process claim:
>
> When a person asserts a procedural due process claim, the court must first determine whether he or she has an interest entitled to due process protection. If the court determines that the person has an interest that is entitled to constitutional due process protection, then the court must determine "what process is due." Once the court determines minimum procedural due process protections to which the person is entitled, the court must finally determine whether the challenged procedures satisfy these minimum requirements.

*Heyne v. Metro. Nashville Bd. of Pub. Educ.*, 380 S.W.3d 715, 731 (Tenn. 2012) (citations omitted). To be entitled to due process protection, the interest shown must be either a liberty interest or a property interest. *Rowe v. Bd. of Educ.*, 938 S.W.2d 351, 354 (Tenn. 1996) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–70 (1972)).

As noted above, Mr. Keller has waived any argument that he has a constitutionally protected liberty interest in this case. Thus, the threshold consideration for Mr. Keller's procedural due process claim is whether he had a property interest that entitled him to due process protection. Absent a protected property interest, there can be no due process violation.

Not long ago, this Court discussed the type of property interest that may give rise to due process protection:

The Fourteenth Amendment's procedural protection of property safeguards the security of interests that a person has already acquired in specific benefits. Property interests protected by the Fourteenth Amendment are not created by the Constitution, but rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source of state law.

   To be entitled to procedural due process protection, a property interest must be more than a "unilateral expectation" or an "abstract need or desire." It must be a "legitimate claim of entitlement" to a specific benefit. The hallmark of property, the United States Supreme Court has emphasized, is an individual entitlement grounded in state law which cannot be removed except "for cause." Once that characteristic is found, the types of interests protected as "property" are varied and, as often as not, intangible, relating "to the whole domain of social and economic fact."

*Tenn. Dep't of Corr. v. Pressley*, 528 S.W.3d 506, 513–14 (Tenn. 2017) (citations omitted).

   To determine whether Mr. Keller had a constitutionally protected property interest in continued employment, we begin with the doctrine of employment at will. "The employment-at-will doctrine is a bedrock of Tennessee common law." *Williams v. City of Burns*, 465 S.W.3d 96, 108 (Tenn. 2015) (citation omitted). In the absence of evidence to the contrary, employees in Tennessee are presumed to be at-will. *See Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 864 (Tenn. 2002) (citing *Rose v. Tipton County Pub. Works Dep't*, 953 S.W.2d 690, 691 (Tenn. Ct. App. 1997)). The employment-at-will doctrine "is the fundamental principle controlling the relationship between employers and employees." *Williams*, 465 S.W.3d at 108 (quoting *Mason v. Seaton*, 942 S.W.2d 470, 474 (Tenn. 1997)).

   Under the employment-at-will doctrine, employment is for an indefinite period of time and may generally be terminated by either the employer or the employee at any time, for any reason, or for no reason at all. *Id.* (citations omitted); *Crews*, 78 S.W.3d at 857–58 (citations omitted); *Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994) (citations omitted). Put another way: "The long standing rule in this State is that an employee-at-will may be discharged without breach of contract for good cause, bad cause or no cause at all, without being thereby guilty of legal wrong." *Williams*, 465 S.W.3d at 108 (quoting *Harney v. Meadowbrook Nursing Ctr.*, 784 S.W.2d 921, 922 (Tenn. 1990)). The employment-at-will doctrine "recognizes that employers need the freedom to make

- 9 -

their own business judgments without interference from the courts." *Id*. (quoting *Mason*, 942 S.W.2d at 474). In the same way, employees have the right to refuse to work for a person or organization. *Crews*, 78 S.W.3d at 858.

Against that background, we look at the parties' arguments.[10] The portion of the City personnel manual on which Mr. Keller relies sets forth appeal procedures for City employees who have been disciplined or dismissed from employment:

### N.    APPEALS PROCESS

Any City employee reprimanded, suspended, demoted, or dismissed has the right to submit a request in writing to the City Manager to have the action reviewed. An employee who chooses to appeal to the City Manager must submit the request for an appeal within two (2) working days of receipt of notification of the disciplinary action, and must state his/her intent to have representation, and to name the representative(s). The request must be in writing. The City Manager shall schedule a hearing within ten (10) working days of the receipt of the employee's written request for appeal. The action of the City Manager shall be final and binding on all parties involved unless appealed to Chancery Court by the employee. However, if the City Manager determines that procedures established by law were not followed by the appropriate Supervisor and/or Department Head, the decision of the City Manager shall be binding on all parties involved unless appealed to Chancery Court by the employee or the City. Any employee reprimanded, suspended, demoted[,] or dismissed must timely request an appeal and complete the appeals process prior to filing an action in Chancery Court.

The City, in turn, relies on a provision in the personnel manual explaining the purpose of the written policies and stating specific disclaimers:

### A.    PURPOSE AND OBJECTIVES

The purpose of these policies is to establish a high degree of understanding, cooperation, efficiency, and unity among municipal government employees which comes from a systematic application of good

---

[10] The briefs filed by amici curiae Public Entity Partners and the Tennessee Municipal Attorneys Association make arguments supportive of the City's position.

procedure in personnel administration, and to provide uniform policies for all employees, with all the benefits such a program insures. . . .

. . . .

These policies nor any provisions herein are an employment contract or any other type of contract. All employees are employed for an indefinite term.

Mr. Keller does not—actually, cannot—point to language in the City personnel manual indicating that he is anything other than an employee at will, so his brief to this Court does not assert a property interest in "continued" employment. Mr. Keller does not dispute that he was given substantially all of the procedures set forth in the City personnel manual, so he does not ask the Court to require the City to afford him those procedures. He posits instead that "Mr. Keller had a property interest in his employment with the City . . . because the [City personnel manual], adopted by [the City's] City Council, created procedures which entitled him to due process."[11]

Indeed, the Court of Appeals did not hold Mr. Keller had a protected property interest in employment for a definite term; it stated: "While the Manual did not expressly provide a right to continued employment, it provided all employees with the unequivocal right to an appeals process concerning said employment and further provided a corresponding right to judicial review of such decisions." *Keller*, 2019 WL 354867, at *7. Similarly, the trial court held the City personnel manual "operates as a contract specifically creating a right to appeal."

---

[11] It is challenging, frankly, to pin down exactly what Mr. Keller claims a property interest *in*. In some cases, for example, employees asserting a due process claim contend that certain policies or procedures show they are not merely at-will employees, as where employees argue written policies indicate they can only be dismissed for cause. In such cases, the petitioners generally contend they have a right to *continued* employment. *See, e.g.*, *Pressley*, 528 S.W.3d at 516; *Brown v. City of Niota*, 214 F.3d 718, 720 (6th Cir. 2000). In other cases, employees argue they have a protected property interest in the *procedures* promulgated by the employer and petition the court to require the employer to give them those procedures. *See, e.g.*, *Fitzgerald v. Hickman Cnty. Gov't*, No. M2017-00565-COA-R3-CV, 2018 WL 1634111, at *7 (Tenn. Ct. App. Apr. 4, 2018) (seeking a right to participate in the grievance process); *Williams v. City of Milan*, No. 1:08-CV-01235, 2009 WL 989775, at *6 (W.D. Tenn. Apr. 8, 2009) (asserting that the procedures for terminating an employee were not followed). Mr. Keller does neither. Instead, somewhat perplexingly, he contends that he had a property interest "in his employment" because of the City's appeal procedures but those very procedures are unconstitutional so the City should have used different ones.

We look, then, at whether Mr. Keller had any type of constitutionally protected property interest arising out of the procedures in the City personnel manual. Our courts have noted that, "[e]ven in the absence of a definite durational term, an employment contract still may exist with regard to other terms of employment."[12] *Rose*, 953 S.W.2d at 692 (citations omitted). In this vein, an employee handbook can become a part of an employment contract. *Id*.; *see also Reed v. Alamo Rent-A-Car, Inc*., 4 S.W.3d 677, 688 (Tenn. Ct. App. 1999). However,

> [i]n order to constitute a contract, . . . the handbook must contain specific language showing the employer's intent to be bound by the handbook's provisions. Unless an employee handbook contains such guarantees or binding commitments, the handbook will not constitute an employment contract. As stated by one court, in order for an employee handbook to be considered part of an employment contract, the language used must be phrased in binding terms, interpreted in the context of the entire handbook, and read in conjunction with any other relevant material, such as an employment application.

*Rose*, 953 S.W.2d at 692 (internal quotation marks omitted) (citations omitted). Thus, there is "a high standard for establishing the existence of an employer's specific intent to be bound by the terms of an employee handbook." *Brown v. City of Niota*, 214 F.3d 718, 721 (6th Cir. 2000) (interpreting Tennessee law).

In this case, to support his assertion of a protectable property interest, Mr. Keller relies primarily on the existence of the City personnel manual and its inclusion of appeal procedures for the discipline and dismissal of City employees. Neither the existence of such procedures nor their inclusion in a personnel manual is sufficient by itself to create a protectable property interest. Employers, including governmental employers, may adopt

---

[12] Some federal courts, interpreting Tennessee law, have made general statements to the effect that "an at-will employee who has a reasonable expectation that his or her employment will only be terminated for cause, may acquire a property interest in continued employment." *England v. Andrews*, No. 2:05-0008, 2005 WL 2209542, at *7 (M.D. Tenn. Sept. 8, 2005); *see also Gregory v. Hunt*, 24 F.3d 781, 785 (6th Cir. 1994) (citing *Chilingirian v. Boris*, 882 F.2d 200, 203 (6th Cir. 1989)) ("An at-will public employee does not have a property interest in continued employment unless it can be shown that the employee had a reasonable expectation that termination would be only for good cause."). This statement is internally inconsistent; even if the employment does not have a durational term, if the employer can only dismiss the employee for just cause, the employment is by definition not at-will. Under employment at will, employment "may be terminated by either the employer or the employee at any time, for any reason, or for no reason at all." *Williams*, 465 S.W.3d at 108.

policies and procedures to promote efficiencies and fair, consistent treatment of employees.[13] Employers may choose to put those policies and procedures in an employee manual or handbook. In the absence of specific language demonstrating the employer's intent to be contractually bound by the policies and procedures, such actions do not change employees' at-will status. *Rose*, 953 S.W.2d at 692 (employee handbook not a contract unless it contains specific guarantees or binding language).

Mr. Keller points to language in the City procedures stating that a dismissed employee "has the right to submit a request" for administrative review by the City Manager, and if such review is granted, the City Manager's decision "shall be final and binding on all parties involved" unless it is appealed to the chancery court. In this case, of course, Mr. Keller was granted the administrative review he requested, and the City Manager upheld the termination of his employment. Mr. Keller argues that these procedures, adopted by the City Council, gave him "a proprietary interest in public employment."[14]

---

[13] To this point, as we have noted, the City personnel manual in this case stated that the policies and procedures were included in order to "establish a high degree of understanding, cooperation, efficiency, and unity among municipal government employees," foster "a systematic application of good procedure in personnel administration, and . . . provide uniform policies for all employees."

[14] In support, Mr. Keller cites *Huddleston v. City of Murfreesboro*, 635 S.W.2d 694 (Tenn. 1982), in which the plaintiff city firefighter challenged the termination of his employment. The plaintiff in *Huddleston* relied on city charter provisions allowing a terminated employee to appeal his dismissal to the city council. *Id.* at 694-95. On appeal, this Court stated that it granted review "to determine whether the Court of Appeals erred in directing that upon remand the trial court should determine the case in accordance with T.C.A., § 27-911." *Id.* at 695. In the course of addressing that issue, the Court commented that the trial court had erred in holding the plaintiff "possessed no proprietary right in his employment" and said the city charter provisions afforded "protection to the plaintiff from unreasonable and unjustified dismissal from employment." *Id.* The Court then issued its holding on the proper statute to apply on remand. *Id.* at 696.

We note the *Huddleston* opinion did not even mention the term "due process." Moreover, as observed by the federal district court in dismissing Mr. Keller's federal due process claims, "courts have recognized that *Huddleston* is 'inapposite' when there is no "statute, ordinance or specific employment contract creating [a proprietary] interest." *Keller*, 2014 WL 2809662, at *5 (quoting *Duncan v. City of Oneida*, 735 F.2d 998, 1001 (6th Cir. 1984)). Most important, *Huddleston* did not involve explicit language that the municipality did not intend for the procedures to be binding or constitute any type of contract, as discussed below. Overall, we find *Huddleston* unhelpful in this case.

The language on which Mr. Keller relies, in and of itself, would be a dubious basis for finding a constitutionally protected property interest. However, we do not interpret this language in isolation. The appeal procedures in the City personnel manual must be viewed "in the context of the entire handbook, and read in conjunction with any other relevant material." *Rose*, 953 S.W.2d at 692 (quoting *Claiborne v. Frito-Lay, Inc*., 718 F. Supp. 1319, 1321 (E.D. Tenn. 1989)). Here, the City personnel manual includes an explicit statement that the City did not intend for the procedures to be binding or constitute any type of contract. It states that none of the provisions in the City personnel manual "are an employment contract or any other type of contract." The manual emphasizes that "[a]ll employees are employed for an indefinite term." In addition, the personnel manual reserves to the City the unilateral right to change or revise the procedures.

As our Court of Appeals has stated, "We can conceive of no clearer way for an employer to express its intent not to be bound by an employee handbook's provisions than the employer's specific statement that the handbook is not a contract or that the handbook should not be construed as a contract." *Adcox v. SCT Prods*., No. 01A01-9703-CV-00123, 1997 WL 638275, at *4 (Tenn. Ct. App. Oct. 17, 1997). Moreover, the City's "reservation of a unilateral right to modify the provisions of its employee handbook generally would preclude the handbook from being considered part of the employment contract." *Id.*; *see also Logue v. Shelbyville Hous. Auth*., No. M1999-02555-COA-R3-CV, 2000 WL 122228, at *1 (Tenn. Ct. App. Feb. 1, 2000) (citations omitted) ("The reservation of a unilateral right to change the handbook contradicts an intent to be contractually bound by its provisions."). Thus, as pointed out by the district court in Mr. Keller's federal action, the personnel manual itself precludes any finding that the City intended to be bound by its terms. *Keller*, 2014 WL 2809662, at *6.

Mr. Keller points out that the City personnel manual was adopted by the City Council. This fact is of no moment. The City's legislative body adopted the entire personnel manual, including the disclaimers that undercut Mr. Keller's claim of a property interest that entitled him to due process protection.

This Court has not yet "held that an employee handbook could convert an at-will employment agreement into a protectable property interest" under the due process clause. *Brown*, 214 F.3d at 721; *see also Gregory v. Hunt*, 24 F.3d 781, 785–87 (6th Cir.1994) (citations omitted) ("In none of the [Tennessee] cases, however, has a court found the terms of an employee handbook converted at-will employment into a protectible property interest."). We decline to do so in this case.

- 14 -

As we observed at the outset of our analysis, the threshold question for Mr. Keller's procedural due process claim is whether he had a constitutionally protected property interest. Without a protected property interest, he cannot assert a claim for a due process violation. We hold that Mr. Keller has not shown a property interest entitled to due process protection.

This holding pretermits the remaining issues on appeal, namely, whether the procedures utilized by the City were unlawful, and whether damages are available as a remedy under a common law writ of certiorari.[15]

**CONCLUSION**

We hold that Mr. Keller has failed to demonstrate he had a property interest entitled to protection under either the due process clause of the United States Constitution or the law of the land clause of the Tennessee Constitution. Consequently, the claims in his petition must be dismissed. The decision of the Court of Appeals is reversed, and the decision of the Chancery Court for Bradley County is affirmed for different reasons. Costs on appeal are taxed to Petitioner-Appellee Joshua Keller, for which execution may issue if necessary.

---

[15] We note our courts have generally held that the remedies available under a common law writ of certiorari are limited and damages are not among them. *See Lewis v. Metro. Taxicab & Wrecker Bd.*, No. 89-66-II, 1989 WL 89760, at *3 (Tenn. Ct. App. Aug. 9, 1989) (quoting *Ashcroft v. Goodman*, 202 S.W. 939, 941 (Tenn. 1918) ("It is generally held that a court reviewing a matter pursuant to a common law writ of certiorari is limited to vacating the illegal finding and remanding the case to the board or agency for the making of a legally supportable decision."); *see also City of Knoxville v. Connors*, 201 S.W. 133, 134 (Tenn. 1918); *Cunningham v. Bd. of Educ.*, 1986 WL 10692, at *4 n.2 (Tenn. Ct. App. Oct. 1, 1986) (citing *Hoover Motor Express Co. v. R.R. & Pub. Utils. Comm'n*, 261 S.W.2d 233, 244 (Tenn. 1953)).

_____

HOLLY KIRBY, JUSTICE